**Lorrie Ann ARNOLD, Plaintiff and Appellant,**

v.

**Dr. Glade B. CURTIS, Defendant and Appellee.**

No. 910146.

Supreme Court of Utah.

Jan. 29, 1993.

Anthony M. Thurber, Salt Lake City, for Arnold.

Elliott J. Williams, Kurt M. Frankenburg, Salt Lake City, for Dr. Curtis.

HOWE, Associate Chief Justice:

Plaintiff Lorrie Ann Arnold appeals from a summary judgment entered against her in a medical malpractice action she brought against defendant Dr. Glade B. Curtis.

Dr. Curtis is a medical doctor specializing in obstetrics and gynecology. He took over Arnold's prenatal care in September of 1986, when her obstetrician left the state. Arnold was at that time midway through her pregnancy. At the next seven office visits, Arnold described her symptoms of pain, constipation, and rectal bleeding to Dr. Curtis. He did not perform a rectal examination until January of 1987, thirty-five weeks into her pregnancy, at which time he discovered a rectal tumor. The baby was then delivered by caesarian section. On February 5, the tumor was removed. She eventually had a permanent colonostomy and radiation therapy.

Arnold commenced this action in February 1989, alleging that Dr. Curtis had failed to timely diagnose an adenocarcinoma of her bowel during the course of prenatal care. On April 23, 1990, Arnold's counsel certified that all discovery had been completed and that the case was ready for trial. On June 18, the trial court held a scheduling conference with counsel for both parties. With the concurrence of both counsel, the court ordered that the parties designate all witnesses by October 31 and complete any additional discovery by December 31. Trial was scheduled to begin on March 5, 1991.

On October 5, 1990, Dr. Curtis moved for summary judgment, supported by the affidavit of Dr. Gary H. Johnson, a specialist in obstetrics, gynecology, and gynecologic oncology. In his affidavit, Dr. Johnson opined that the care defendant had provided complied with the standards of care observed and followed by specialists in obstetrics and gynecology and, in any event, an earlier diagnosis of the adenocarcinoma would not have changed the outcome because the child could not have been delivered sooner. On December 31, Arnold responded to defendant's motion for summary judgment with a memorandum and supporting affidavit from Dr. Donald Houston, a specialist in general surgery. In his affidavit, he stated that he was familiar with the standards of appropriate medical care involved in the diagnosis, care, and treatment of patients showing signs and symptoms of rectal carcinoma and related conditions. He further stated that he had reviewed Arnold's medical records and opined that the care and treatment rendered by Dr. Curtis fell beneath the standards of medical care ordinarily exercised in this community at that time and that defendant was negligent in failing to diagnose the carcinoma sooner.

On January 7, 1991, Dr. Curtis filed a reply memorandum in which he contended that Arnold's response to his motion failed to raise any genuine issue of material fact. Dr. Curtis asserted that Dr. Houston, a specialist in general surgery, was not qualified to comment on the standard of care applicable to a specialist in obstetrics. On January 29, Arnold filed and served another opposing affidavit from a specialist in obstetrics, Dr. Kenneth McHenry. Defendant promptly filed a motion to strike the affidavit on the grounds that (1) Dr. McHenry had not been designated as a witness before October 31, 1990, as required by the scheduling order, and (2) the affidavit was untimely because it was filed beyond the time allowed by rule 4–501 of the Code of Judicial Administration. Subsequently, at a hearing on the motions, the trial court refused to consider the affidavit of either Dr. Houston or Dr. McHenry, the former because Dr. Houston was not an obstetrical specialist and the latter because it was untimely filed. The court thereupon determined that without opposing affidavit testimony, there was no opposition to the affidavit of defendant's expert, Dr. Gary Johnson. Summary judgment for defen-

dant was therefore granted. Arnold appeals.

Turning first to the McHenry affidavit, Arnold contends that it was timely served and filed according to rule 56(c) of the Utah Rules of Civil Procedure, which states that "the adverse party prior to the date of hearing may serve opposing affidavits." Arnold reasons that since the McHenry affidavit was served on January 29 and the hearing on the motion for summary judgment was held three weeks later, on February 22, the trial court erred in its determination that the affidavit was untimely served and filed. Arnold argues that rule 56(c) is controlling here and not rule 4–501 of the Code of Judicial Administration, which the trial court relied upon in part. As to the scheduling order which required that all witnesses be designated by October 31, Arnold argues that (1) the certificate of mailing on the scheduling order was not signed by the clerk of the court, and (2) there is no requirement in the rules or elsewhere that affidavits opposing summary judgment may only be from witnesses who have been previously designated. Arnold argues that opposing affidavits are in the nature of rebuttal testimony and that rebuttal witnesses need "never be designated before they are called to testify."

■ We need not and do not here resolve any apparent conflict between rule 56(c) of the Utah Rules of Civil Procedure and rule 4–501 of the Code of Judicial Administration. The ruling of the trial court that the filing of Dr. McHenry's affidavit was untimely can be sustained on the ground that Arnold failed to timely designate him as a witness. Arnold's counsel, on April 23, 1990, represented to the trial court that all discovery had been completed and certified the case as ready for trial. Pursuant to that certification, the trial court held a scheduling conference. With the concurrence of both counsel, the court ordered the designation of all witnesses by October 31 and completion of additional discovery by December 31. This order was reduced to writing and filed in the court record.

While it is true that the court clerk has not certified that a copy of the written order was mailed to counsel for the parties, Arnold's counsel does not deny that he had actual notice of the order. Under these circumstances, we must disregard the lack of proof of mailing as harmless error. Utah R.Civ.P. 61.

Arnold did not request a change in the trial court's scheduling order. She failed to file a designation of witnesses as ordered by the court, although in answers to interrogatories she did identify Dr. Houston as a potential expert witness. Defendant does not contend that Dr. Houston was not timely designated. It is only the affidavit of Dr. McHenry, who prior to January 29, 1991, had not been designated or identified in any way, which was ruled untimely by the trial court.

Rule 16(d) of the Utah Rules of Civil Procedure states in relevant part:

If a party or a party's attorney fails to obey a scheduling or pre-trial order, ... the court, upon a motion or its own initiative, may make such orders with regard thereto as are just, and among others, any of the orders provided in Rule 37(b)(2)(B), (C), (D).

The last mentioned subsections expressly provide that the trial court may exclude evidence offered in violation of the court's scheduling order or may even order dismissal of the action:

B.  ... refusing to allow the disobedient party to support or oppose designated claims or defenses or prohibiting him from introducing designated matters in evidence;

C.  ... dismissing the action or proceeding or any part thereof[.]

Arnold further argues that the exclusion of an expert witness's testimony on the basis of a late designation constitutes an abuse of discretion. She cites *Dugan v. Jones*, 615 P.2d 1239, 1244 (Utah 1980), in support of that argument. That case is distinguishable. It was decided prior to the 1987 amendment of rule 16 which add-

ed the language providing for the sanctions quoted above. This amendment conforms with a virtually identical 1983 amendment of rule 16 of the Federal Rules of Civil Procedure. The amendment reinforces rule 16's "intention to encourage forceful judicial management." 6A Charles A. Wright et al., *Federal Practice and Procedure* § 1531, at 314 (1990). "Sanctions often are imposed when parties fail to obey pretrial orders requiring the attorney to file statements, witness lists, or lists of evidence. In those situations, evidence has been excluded; defenses have been stricken...." *Id.*

We find no merit in Arnold's argument that Dr. McHenry's affidavit was in the nature of rebuttal testimony and that it was not subject to the requirements of the scheduling order. In the first place, there is no indication in the scheduling order that the court intended to make any differentiation in the designation of witnesses who might appear in the case-in-chief as opposed to rebuttal. Secondly, inasmuch as the plaintiff in a malpractice action is required to present competent, qualified expert testimony to establish a prima facie case, it appears that the affidavit was obtained for that purpose and not merely intended as rebuttal testimony.

In summary, we held the trial court did not abuse its discretion in refusing to consider Dr. McHenry's affidavit on the ground that it was filed in derogation of the scheduling order entered eight months earlier and in view of the fact that Arnold did not at any time ask to be relieved of the time requirement of the order. While scheduling orders should never be so inflexible as to not accommodate exigencies that may occur, they are necessary to expedite the flow of cases through the court system and should not be lightly disregarded.

■ We turn now to the trial court's refusal to consider the affidavit of Dr. Houston because his specialty was general surgery and Dr. Curtis was a specialist in obstetrics and gynecology. As Dr. Curtis points out, the standard of care by which a physician's conduct is to be measured is normally that observed by physicians practicing in the same specialty. Practitioners in one specialty are not ordinarily competent to testify as experts on the standard of care applicable in another specialty. *Burton v. Youngblood,* 711 P.2d 245 (Utah 1985). An exception is made when a witness is knowledgeable about the standard of care of another specialty or when the standards of different specialties on the issue in a particular case are the same. *Id.* at 248. Arnold asserts that Dr. Houston was competent to give an opinion in this case because the diagnosis of Arnold's rectal carcinoma was not peculiar to the practice of obstetrics but was a disorder that should have been recognized and diagnosed by any physician, irrespective of his or her specialty. Arnold likens the recognition and diagnosis of her condition to the recognition of cardiopulmonary arrest or a compound fracture of the arm, which any medical physician should recognize.

■ We need not decide whether Dr. Houston was competent to give an opinion in his affidavit because the affidavit was deficient in another respect. Arnold admits that the burden is upon her to establish by expert testimony that the negligence of defendant proximately caused her injury. *Butterfield v. Okubo,* 831 P.2d 97 (Utah 1992); *see also King v. Searle Pharmaceuticals, Inc.,* 832 P.2d 858 (Utah 1992). Dr. Johnson in his affidavit opined that the obstetrical care rendered to Arnold by Dr. Curtis was appropriate and in response to her complaints and that "in any event, had an earlier diagnosis been made, the outcome would have been the same as the infant could not have been delivered sooner." The affidavit of Dr. Houston is devoid of any statement of proximate cause and in no way counters or contradicts the opinion of Dr. Johnson that an earlier diagnosis of Arnold's carcinoma would not have permitted earlier treatment or surgery for that condition. Her baby was delivered at

the earliest time a safe delivery was possible, and surgery for her carcinoma then followed. Under these circumstances, summary judgment was proper.

Affirmed.

HALL, C.J., and DURHAM, STEWART and ZIMMERMAN, JJ., concur.

Legality of search during which defendant was found to have been possessing marijuana was irrelevant to charge of tampering with evidence arising when defendant removed and swallowed bag with marijuana that police had taken into custody; removing and swallowing bag impaired availability of marijuana for investigation irrespective of its admissibility at trial. U.C.A.1953, 76–8–510.