Christopher J. BOWER and Mary Lynne Perry, Plaintiffs,

v.

**STEIN ERIKSEN LODGE OWNERS ASSOCIATION, INC., a Utah non-profit corporation, Defendants.**

No. 2:99–CV–155C.

United States District Court, D. Utah, Central Division.

May 3, 2002.

Michael J. Kelley, James S. Lowrie, Jeffrey W. Shields, D. James Morgan, Ryan M. Harris, Jones Waldo Holbrook & McDonough, Salt Lake City, UT, Henry E. Heath, Robert L. Janicki, Strong & Hanni, for Plaintiffs.

Eric T. Johnson, Ballard Spahr Andrews & Ingersoll, David J. Crapo, Mary Anne Q. Wood, Sheri A. Mower, Richard J. Armstrong, Wood Crapo LLC, Jeffery Scott Williams, Milo Steven Marsden, James R. Sonne, Bendinger Crockett Peterson & Casey, Salt Lake City, Salt Lake City, UT, for Defendants.

## ORDER

CAMPBELL, District Judge.

This matter is before the court on several motions: (1) Christopher J. Bower's and

Mary Lynne Perry's ("the Bowers") motion for partial summary judgement regarding Stein Eriksen Lodge's ("SEL's") claim of tortious interference with economic relations; (2) the Bowers' motion to strike the declaration of Dennis A. Suskind, the February 5, 1999 letter, and sections of SEL's memorandum in opposition that refer to the declaration; (3) SEL's motion for summary judgement as to liability on SEL's breach of contract claim; (4) the Bowers' motion for partial summary judgment regarding SEL's breach of contract claim; (5) SEL's motion for summary judgment on the Bowers' claims of fraud, negligent misrepresentation, tortious interference with economic relations, promissory estoppel, and breach of fiduciary duty and good faith and fair dealing.

## I. Background

The factual background of this case is set forth in the pleadings of the parties and will not be repeated here except as necessary. However, a summary of the court's September 8, 1999 Order (given orally), is necessary. In that order, the court granted SEL's motion for partial summary judgment and denied the Bowers' motion for partial summary judgment. At issue were the various contract claims brought by the parties. With this order, the court reached the following conclusions. First, the Bowers cannot challenge Park City's decision regarding the Phase III construction. The Bowers failed to exhaust their administrative remedies and are therefore precluded from seeking review in this lawsuit of Park City's decision. Second, SEL did not breach any contractual obligations owed to the Bowers when it constructed the Phase III residential units and the conference center. On or about September 24, 1996, the unit owners approved, by approximately 79 %, the conversion of the convertible land to Phase III residential units. On or about November 14, 1997, the unit owners approved, by approximately 82%, the development plans for Phase III. These votes authorized the Phase III construction pursuant to the Condominium Declaration for Stein Eriksen Lodge ("the Declaration") (SEL's Mem. Supp. P. Summ. J. (June 22, 1999), at Ex. A) and the Condominium Ownership Act, Utah Code Ann. § 57–8–1 et seq. ("the Act"). Finally, the financing arrangements, assessments, and expenditures made in connection with the Phase III construction were authorized by the Declaration and the Articles of Incorporation.

## II. Analysis:

### A. Standard of Review

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R.Civ.P. 56(c). The party seeking summary judgment bears the initial burden of demonstrating that there is an absence of evidence to support the non-moving party's case. *Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In applying this standard, the court must construe all facts and reasonable inferences therefrom in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Pueblo of Santa Ana v. Kelly,* 104 F.3d 1546, 1552 (10th Cir. 1997).

Once the moving party has carried its burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by ... affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex,* 477 U.S. at 324, 106 S.Ct. 2548

(quoting Fed.R.Civ.P. 56(e)); *see also Gonzales v. Millers Cas. Ins. Co.*, 923 F.2d 1417, 1419 (10th Cir.1991). The non-moving party must set forth specific facts showing a genuine issue for trial; mere allegations and references to the pleadings will not suffice. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

**B.** *The Bowers' Motion for Partial Summary Judgment to Dismiss SEL's Claim of Tortious Interference with Economic Relations.*

The Bowers seek partial summary judgment on SEL's claim of tortious interference with economic relations claiming that the lis pendens that they filed and the settlement demand letter are privileged and therefore cannot be the subject of a claim of tortious interference with economic relations. At issue is whether (1) a copy of a settlement demand letter distributed to the condominium owners and (2) the lis pendens notice against SEL's properties fall within the scope of the judicial proceeding privilege.

■■■ The judicial proceeding privilege recognizes that statements of attorneys, parties, judges, witnesses, and other participants in the judicial process enjoy an absolute privilege against liability for torts if the statements are made during or preliminary to a judicial proceeding. Three elements must be satisfied for the privilege to apply: (1) "the statement must have been made during or in the course of a judicial proceeding; (2) the statement must have some reference to the subject matter of the proceeding; and (3) the statement must have been made by someone acting in the capacity of judge, juror, witness, litigant or counsel." *Price v. Armour*, 949 P.2d 1251, 1256 (Utah 1997).

■■■ The settlement demand letter meets the three elements of the judicial proceeding privilege. Although the letter was written before the actual proceeding, that is, this lawsuit, preliminary communication falls within the broad language of "during judicial proceeding." *Price*, 949 P.2d at 1256–57. Similarly, "referencing the subject matter" is read expansively and includes any reference to the judicial proceeding, regardless of whether the reference is material. *Allen v. Ortez*, 802 P.2d 1307, 1312 (Utah 1990). Because the letter was written by the Bowers' attorney, it also meets the third element. *Price*, 949 P.2d at 1256. Furthermore, the Bowers did not lose the privilege when they published the letter to other condominium owners who were not parties to the suit. *Theiss v. Scherer*, 17 Ohio Misc. 172, 396 F.2d 646, 648 (6th Cir.1968) (publication to non-parties will not destroy the privilege if the non-parties "have a direct financial interest in the case"); *see also Costa v. Superior Court*, 157 Cal.App.3d 673, 204 Cal.Rptr. 1 (1984) (lodge members possessed a substantial interest in the outcome of the pending litigation); *Club Valencia Homeowners Ass'n v. Valencia Assocs.* 712 P.2d 1024, 1026–27 (Colo.Ct.App. 1985) (finding that a "lawsuit involving the homeowners' association would undoubtedly involve the interests of individual homeowners") (citing *Conestoga Pines Homeowners' Association, Inc. v. Black*, 689 P.2d 1176 (Colo.App.1984)). In this case, the condominium owners have a direct financial interest in the outcome of this lawsuit; the attorney expenses, the potential for damages, the delay in construction each directly affect their interests.

■■■ The lis pendens is also privileged. "[A] lis pendens is, in effect, a republication of the pleadings. Since the publication of the pleadings is absolutely privileged, the republication thereof by recording a notice of lis pendens is similarly privileged." *Hansen*, 550 P.2d at

190 (citing *Albertson v. Raboff*, 46 Cal.2d 375, 295 P.2d 405 (1956)).

■ SEL's argument that the Bowers' lis pendens is invalid, and therefore, the judicial proceeding privilege does not attach, is without merit. SEL relies on *Hansen*, where the court interpreted the holding in *Birch v. Fuller*, 9 Utah 2d 79, 337 P.2d 964 (1959). Although the *Birch* court did not allow the privilege, the *Hansen* court distinguished this decision, stating that because no legal action was filed, "the recordation of the lis pendens in that matter was neither in accordance with law, nor did it constitute a republication of the pleadings filed in the action." *Hansen*, 550 P.2d at 190. It is unclear, however, whether the court was making a general statement that a lis pendens not in accordance with the law loses its privilege or, more narrowly, that because this particular lis pendens was not attached to a pleading, the privilege was lost.

A better explanation can be found in *Prappas v. Meyerland Community Improvement Association*, 795 S.W.2d 794, 797–98 (1990), which states that: "Noncompliance with filing requirements in no way abrogates the privilege which has long gone hand in hand with judicial proceedings; the remedy is removal of the noncomplying material." The court in *Prappas* reasoned that, by analogy, if a pleading was not authorized, the remedy would be for the court to strike the pleading, and "no loss of privilege ensues." *See Prappas*, 795 S.W.2d at 797; *see also Manders v. Manders*, 897 F.Supp. 972 (S.D.Tx.1995).

Therefore, the settlement demand letter and the lis pendens fall within the judicial proceeding privilege and cannot be the basis for claiming tortious interference with economic relations.

■ SEL contends that other actions by the Bowers were motivated by improper motive, such as filing this lawsuit. Be-cause the Bowers did not respond to this claim, they fail to meet their burden of proof. Therefore, the court GRANTS in part and DENIES in part the Bowers' motion for partial summary judgment. The court GRANTS the Bowers' motion for partial summary judgment to the extent that the settlement demand letter and the lis pendens are covered by the judicial proceeding privilege. However, the court DENIES the Bowers' motion for partial summary judgment to dismiss the tortious interference claim because the Bowers failed to address the other allegations claimed by SEL.

C. *The Bowers' Motion to Strike the Declaration of Dennis A. Suskind, the February 5, 1999 Letter, and Sections of SEL's Memorandum in Opposition That Refer to the Declaration.*

■ The Bowers argue that the declaration of Dennis A. Suskind, the February 5, 1999 letter, and sections of SEL's memorandum in opposition that refer to the declaration should be stricken under Federal Rules of Evidence 408 as inadmissible statements made in settlement negotiations.

Under Rule 408, "[e]vidence of conduct or statements made in compromise negotiations is likewise not admissible." F.R.E. 408. Rule 408 excludes not only actual settlement offers, but also statements made during settlement negotiations. However, Rule 408 does not exclude evidence "offered for another purpose." Evidence of a party's bad faith may fall under "another purpose." The Bowers correctly observe that the declaration and the February 5, 1999 letter are part of settlement negotiations, and therefore, are inadmissible under Rule 408.

SEL argues, however, that it wants to use Suskind's declarations merely to establish the Bowers' bad faith and not their

liability. SEL incorrectly relies on *Bradbury v. Phillips*, 815 F.2d 1356, 1364 (10th Cir.1987), where the court admitted settlement evidence, from a *previous* case, to show that defendant engaged in a *pattern* of conduct evincing recklessness. (emphasis added.) A better analysis is found in *McInnis v. A.M.F.* 765 F.2d 240 (1st. Cir. 1985). In *McInnis*, the court found that the "[settlement] was offered as relevant to the issue of causation, [and therefore] we have no difficulty in ruling that the evidence of causation or non-causation is fully subsumed under Rule 408's meaning of validity or invalidity of a claim." *Id.* at 248. *Bradbury* also states that "when the issue is doubtful, the better practice is to exclude evidence of compromises or compromise offers." 815 F.2d at 1364. Therefore, the court GRANTS the Bowers' motion to strike.

D. *The Parties Cross Motions for Partial Summary Judgment on SEL's Breach of Contract Claim*

 SEL contends that the Bowers are liable under the Declaration when the Bowers failed to pay the special assessment fee for construction of Phase III issued by SEL on May 1, 1999. According to SEL, the Bowers also breached the Declaration when they filed this lawsuit.

The Bowers, on the other hand, argue that SEL's breach of contract claim should be dismissed because any breach committed by the Bowers has been cured. The Bowers contend that although the assessment fee was originally due on May 1, 1999, SEL granted an extension. The Bowers rely on a August 1999 letter written by a SEL attorney. The letter stated that SEL would "delay exercising its rights and remedies to collect the Special Assessment from [the Bowers] until after the pending litigation is resolved." (Bowers' Reply Memo. Supp. P. Summ. J. at Ex. A). The Bowers claim that because they paid the assessment fee on the date

when requested by SEL, no breach occurred and SEL's claim of breach of contract should be dismissed.

But, it is unclear from the letter if SEL did, in fact, grant an extension. This issue must be resolved by the trier of fact. On the issue of whether the Bowers violated the Declaration, the Declaration language cannot be so widely interpreted to prevent the Bowers from seeking redress in the courts. Therefore, the Bowers' and SEL's motions for summary judgment are DENIED.

E. *SEL's Motion for Summary Judgment on the Bowers' Claims of Fraud, Negligent Misrepresentation, Tortious Interference, Promissory Estoppel, and Breach of Fiduciary Duty and Good Faith and Fair Dealing.*

**1. Fraud**

 SEL seeks summary judgment on the Bowers' claim that SEL fraudulently induced the Bowers into buying their condominium. At issue is whether the Bowers were deceived when they bought the condominium in 1996.

 To prevail on a fraud claim, a plaintiff must prove by *clear and convincing* evidence 1) that a representation was made 2) concerning a presently existing material fact 3) which was false 4) which the representer either knew to be false or made recklessly, knowing that he had insufficient knowledge upon which to base such representations 5) for the purpose of inducing the other party to act upon it 6) that the other party, acting reasonably and in ignorance of its falsity 7) did in fact rely upon it 8) and was thereby induced to act 9) to his injury and damage. *Otsuka Electronics v. Imaging Specialists, Inc.* 937 P.2d 1274, 1278 (Utah Ct.App.1997).

SEL argues that summary judgment is proper for three reasons: (1) there is no

genuine issue that the alleged misrepresentations did not relate to a presently existing material fact; (2) there is no evidence that the representations allegedly made were false when made or that Clare Jackson, a licensed real estate agent hired to operate Stein Eriksen Lodge Real Estate, and Russ Olsen, General Manager of SEL, knew that they were false when made; and (3) any reliance by the Bowers was unreasonable. The basis of SEL's argument is that any plans for future construction were indefinite and speculative.

(a) *"misrepresentation of presently existing fact"*

SEL argues that at the time the Bowers inquired about future plans for construction, plans were indefinite and speculative. SEL cites documents establishing that SEL intended to construct Phase III "down the hill" from the condominiums to avoid potential problems with obstructing views. (*See* SF ¶¶ 15, 18, 24, SEL's Mem. Supp. Summ. J.). Furthermore, the evidence establishes there was no agreement with a developer; no preliminary approval for a design; no agreement among the SEL board regarding the scope of the project; no presentation or approval of plans by the condominium owners; and no approval by the regulatory authorities for Phase III construction. (*Id.* ¶¶ 22–27). The only evidence indicating that SEL might not be able to build Phase III structures "down the hill" was a decision by the Park City Commission in 1984. This decision prohibited construction where SEL claimed that it was likely to build Phase III. It was not until 1997, when Park City failed to provide authorization for development "down the hill" that SEL confirmed plans to construct Phase III in a place that obstructed the Bowers' view. (Olsen Depo. at 116–118, 232).

In addition, SEL relies on Mary Lynn Perry's testimony to support its claim that it never stated whether construction plans were definite, and in fact, the Bowers knew that the plans could change. According to Perry:

> I don't remember exact words, but I do remember generally that [Jackson] said . . .that there was a potential Phase III that had been discussed over the years, that it had never happened, that it was possible that it would never happen, and that at times it had been discussed to be . . . placed in different parts of the property. . . . at that point . . . [Jackson] . . . pointed sort of over the road and to the left, and said, 'The most likely spot would be in this direction (Indicating),' which would have been over the balcony to the left and down the hillside.

(Perry Depo. at 64–65).

The Bowers, however, contend that "there were assurances made to us that could be promises that we were not going to have a major, significant impact on our view from Phase III." (Perry Depo. at 113).

The evidence clearly shows that when the Bowers inquired about the possibility of future construction, any plans were indefinite. However, given the fact that the Bowers have produced evidence indicating that definite assurances were made to them, the question of whether Jackson and Olsen misrepresented a presently existing fact is a question for the jury to decide.

(b) *evidence that the representations were false when made*

SEL claims that there was no evidence that the representations about future construction were false when made, or that Jackson and Olsen knew that statements about construction were false when made. As stated above, because the Bowers have produced evidence to support their claim that misrepresentations were knowingly made about the location of future construc-

tion, facts are in dispute that must be resolved at trial.

#### (c) *Reasonableness of the Bowers' reliance*

SEL argues that the Bowers cannot establish either reliance in fact or justifiable reliance on the alleged misrepresentations. SEL contends that the Bowers are attorneys with experience in large commercial transactions. Moreover, the Bowers' conclusions that future construction would not impact their view were contrary to what their relator told them; were inconsistent with the documents on file in Summit County; and inconsistent with information in the title insurance policy, which disclosed, among other things, that the "Common Areas and Facilities appurtenant to the condominium were subject to 'alteration both in the magnitude of said undivided ownership interest and in the composition of the Common Areas and Facilities to which said interest relates.'" (SEL's Mem. Supp. Summ. J. p. 10, citing Policy of Title Insurance, Ex. Y, at Exhibit A.)

The Bowers, however, have produced evidence to the contrary, including repeated representations from Olsen and Jackson both orally and in writing that Phase III would not be built where it would obstruct their view. Therefore, whether the Bowers reasonably relied upon SEL's misrepresentations is a question of fact for the jury to decide. *Berkeley Bank v. Meibos*, 607 P.2d 798, 801 (Utah 1980) ("The issue of actual reliance and the reasonableness of the reliance is, of course, for the jury to determine."). In sum, SEL's motion for summary judgment on the Bowers' fraud claim is DENIED.

#### 2. Negligent misrepresentation

SEL argues that the Bowers' claim of negligent misrepresentation fails because it is barred by the economic loss rule and, moreover, the Bowers did not reasonable rely on the alleged negligent misrepresentation.

SEL relies on several cases that hold "economic damages are not recoverable in negligence absent physical property damage or bodily harm." *American Towers Owners Assoc. v. CCI Mechanical Inc.*, 930 P.2d 1182, 1189 (Utah 1996); *see also SME Industries, Inc. v. Thompson, Ventulett, Stainback & Assoc.*, 28 P.3d 669, 682, 683 (Utah 2001) ("in the context of construction litigation regarding the alleged negligence of design professionals, a tort for negligent misrepresentation alleging damages based purely on economic loss is not available."); *Anderson Electric, Inc. v. Ledbetter Erection Corp.*, 115 Ill.2d 146, 104 Ill.Dec. 689, 503 N.E.2d 246 (Ill 1986) ( "A plaintiff seeking to recover purely economic losses due to defeated expectations of a commercial bargain cannot recover in tort, regardless of the plaintiff's inability to recover under an action in contract."); *Redarowicz v. Ohlendorf*, 92 Ill.2d 171, 65 Ill.Dec. 411, 441 N.E.2d 324 (Ill.1982) (allocation of risk is a matter of contract and therefore remedy for economic injury lies in contract).

▮ However, the law is unclear on whether the economic loss rule is in fact a bar to a claim of negligent misrepresentation. Utah courts have allowed negligent misrepresentation cases to proceed where a plaintiff seeks damages for economic loss only. In *Alta Health Strategies, Inc. v. CCI Mechanical Serv.*, 930 P.2d 280, 286 (Utah Ct.App.1996), the court stated: "The proper measure of damages in an action for negligent misrepresentation is that 'necessary to compensate the plaintiff for the pecuniary loss to him [of] which the misrepresentation is the legal cause.'" (citing *Forsberg v. Burningham & Kimball*, 892 P.2d 23, 27 (Utah App.1995)) (quoting Restatement (Second) of Torts § 552B(1) (1976)). "Therefore, to prove damages under this claim, [plaintiff] simply needed to show it suffered a pecuniary loss caused by

[defendant's] negligent misrepresentation." *See also Utah Foam Products Co. v. Upjohn Co.,* 154 F.3d 1212 (10th Cir.1998).

 It appears that the Utah Supreme Court, if faced with the question, would hold that a claim for negligent misrepresentation is not barred by the economic loss rule. Accordingly, the Bowers' negligent misrepresentation claim may proceed. And as discussed above, reasonable reliance is a jury question. Therefore, SEL's motion for summary judgment on the Bowers' claim of negligent misrepresentation is DENIED.

### 3. Tortious Interference with Economic Relations

 SEL argues that the Bowers have failed to allege or establish an essential element for an action of tortious interference. The Bowers' claim of tortious interference is premised on their contention that the obstructed view lowers both the fair market value and the rentability of their condominium, and therefore, interferes with *prospective* economic relations. In addition, according to the Bowers, SEL's deceit and misrepresentations regarding the location of Phase III construction establishes improper means. Lastly, the Bowers allege that they have suffered an injury because the condominium is now worth less.

 To recover for interference with economic relations under Utah law, a plaintiff must show:

(1) that the defendant intentionally interfered with the plaintiff's existing or potential economic relations;

(2) for an improper purpose or by improper means;

(3) causing injury to the plaintiff.

*St. Benedict's Development v. St. Benedict's Hospital,* 811 P.2d 194, 200 (Utah 1991); *Leigh Furniture and Carpet Co. v. Isom,* 657 P.2d 293, 304 (Utah 1982).

SEL argues that the Bowers fail to establish the existence of a *third party* with whom SEL allegedly *intentionally* interfered. SEL contends that it cannot intentionally interfere with a third party without any knowledge or notice of a third party relationship. According to SEL, the Bowers fail to cite any evidence that SEL *intentionally* proceeded with the Phase III construction to injure the Bowers. Nor do the Bowers provide any evidence that Jackson or Olsen *intended* to injure them. Lastly, the Bowers fail to establish any *damages:* they have not tried to sell the condominium; they continue to rent it; and any future interference with renters caused by the construction is speculative.

SEL is correct that the Bowers' allegations of interference with a third party and damages are too speculative. Therefore, because the Bowers cannot meet their burden, SEL's motion for summary judgment on the Bowers' claim of tortious interference is GRANTED.

### 4. Promissory Estoppel

 According to SEL, the principal reason that summary judgment should be granted on this claim is (1) no evidence exists that SEL promised the Bowers that their view would not be disturbed, or that Phase III would be constructed in any particular area, and (2) the Bowers did not detrimentally rely on the promise.

The Restatement (Second) of Contracts § 90 states:

[a] promise made which the promisor should reasonably expect to induce action or forbearance on the part of the promisee and which does induce such action or forbearance is binding if injustices can be avoided only by enforcement of the promise.

Section 90, Restatement (Second) of Contracts; *see also Tolboe Construction Co. v. Staker Paving and Construction Co.,* 682

P.2d 843, 845–46 (Utah 1984); *Andreason v. Aetna Casualty & Surety Co.*, 848 P.2d 171 (Utah Ct.App.1993).

Again, this claim is based primarily on fraud. As discussed previously, whether SEL "promised" that future construction would not interfere with the Bowers' view is a question of fact. Accordingly, SEL's summary judgment motion to dismiss the Bowers' claim of promissory estoppel is DENIED.

## 5. Breach of fiduciary duty or breach of covenant of good faith and fair dealing

### (a) *Fiduciary duty*

 In order to establish a fiduciary relationship, a party must prove facts establishing dependency by one party on the other, and a voluntary assumption of a duty by the other party to advise, counsel and protect the weaker party. *Von Hake v. Thomas*, 705 P.2d 766, 769 (Utah 1985). However, the "[m]ere confidence in one [party] by another is not sufficient alone to constitute [a fiduciary or confidential] relationship." *Id.* In particular, "[u]nder Utah law, the general rule is no fiduciary obligations exist between a buyer and seller of any property." *Dugan v. Jones*, 615 P.2d 1239, 1247 (Utah 1980), *superseded by statute on other grounds*, 846 P.2d 1307 (Utah 1993).

 The Bowers have produced no evidence that SEL owed a fiduciary duty to them before the sale of the condominium. The Bowers were represented by their own realtor and the Bowers understood that Jackson represented SEL.[1] Nor was there a breach of fiduciary duty after the Bowers' bought the condominium. This court has previously held that SEL did not

act improperly in moving forward with the construction of Phase III. Therefore, SEL's motion for summary judgment to dismiss the Bowers' claim that SEL violated a fiduciary duty is GRANTED

### (b) *Good faith and fair dealing*

 SEL did not breach the covenant of good faith and fair dealing. Because no contract existed prior to the purchase of the condominium, there can be no implied terms, and therefore no breach. And because SEL did not breach the contract that existed between SEL and the Bowers when SEL constructed Phase III, there is no breach of the covenant of good faith and fair dealing there as well. Therefore, SEL's motion for summary judgment on the Bowers' claim of breach of fiduciary duty or breach of covenant of good faith and fair dealing is GRANTED.

## Order

The court hereby GRANTS:

1. Bower's Motion for Partial Summary Judgment on SEL's claim of tortious interference with economic relations to the extent that the lis pendens and the settlement demand letter are covered by the judicial proceeding privilege;

2. The Bowers' Motion to Strike the Declaration of Dennis A. Suskind, the February 5, 1999 Letter, and Sections of SEL's Memorandum in Opposition that refer to the Declaration;

3. SEL's Motion for Summary Judgment on the Bowers' tortious interference with economic relations; and

---

1. The Bowers admit that no fiduciary duty existed, but argue that under Utah law, real estate agents have a "heightened duty" to be honest, ethical, and competent and this duty extends not only to the person whom the agent represents but also to the prospective purchaser. *Dugan*, 615 P.2d at 1248–49. This line of reasoning goes to fraud, not breach of fiduciary duty.

4. SEL's Motion for Summary Judgment on the Bowers' breach of fiduciary duty and good faith and fair dealing claims.

The court hereby DENIES:

1. The Bowers' Motion for Summary Judgment on SEL's breach of contract claim;

2. SEL's Motion for Summary Judgment on its breach of contract claim;

3. SEL's Motion for Summary Judgment on the Bowers' fraud claim;

3. SEL's Motion for Summary Judgment on the Bowers' negligent misrepresentation claim; and

4. SEL's Motion for Summary Judgment on the Bowers' promissory estoppel claim.